UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                        Case No. 8:16-CR-215-T-27TGW

SEGUNDO DIMAS PRADO RUIZ
_____/

### SENTENCING MEMORANDUM

The Defendant, Mr. Segundo Dimas Prado Ruiz ("Mr. Prado Ruiz"), by and through his undersigned attorney, Mr. Adam J. Nate, pursuant to 18 U.S.C. §§ 3553 and 3551, files this Sentencing Memorandum in support of his request for a reasonable sentence that is not greater than necessary to satisfy the statutory purposes of sentencing enumerated in 18 U.S.C. § 3553. Toward that end, Mr. Prado Ruiz respectfully requests an imprisonment sentence of 120 months.

### MEMORANDUM OF LAW AND ARGUMENT

The federal statute governing sentencing requires this Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of that statutory provision. 18 U.S.C. § 3553(a). The minimum term of imprisonment this Court can impose is 120 months, with a maximum penalty of life in prison. 21 U.S.C. § 960(b)(1)(B)(ii); Presentence Investigation Report ("PSR") ¶ 54. The PSR has determined that Mr. Prado Ruiz's

1

guideline imprisonment range is 168 – 210 months, based on a total offense level of 35 and a criminal history category of I.  PSR ¶ 55.  The guideline provisions are, as the Court is well aware, only advisory and they cannot be presumed reasonable. Though the Court must consider the guideline provisions along with a broad range of factors, including the nature and circumstances of the offense and Mr. Prado Ruiz's personal history and characteristics, it is not obligated to follow those provisions. *United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Nelson v. United States*, 555 U.S. 350 (2009).  Thus, the Court has great discretion in sentencing Mr. Prado Ruiz, and in fashioning an appropriate, individualized sentence for him, the only restriction 18 U.S.C. § 3553(a) places on the Court is the so-called "parsimony" provision, noted above, which requires this Court to impose a sentence only long enough to achieve the purposes of sentencing, and no longer.  Toward that end, Mr. Prado Ruiz respectfully requests a prison sentence of 120 months for the following reasons:

> **I.      Mr. Prado Ruiz should receive a 2-level minor role reduction pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2(b).**

The United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate mitigating role reduction.  Specifically, U.S.S.G. § 3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal activity."  The

determination of whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent upon the facts of the particular case." *See* U.S.S.G. § 3B1.2 App. N. 3(C). The application notes of U.S.S.G. § 3B1.2 provide guidance on distinguishing between a "minimal" and a "minor" participant. The application notes provide that a minimal participant is a person

> who plays a minimal role in the criminal activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the application notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, App. N. 5. Regarding mitigating role reductions in general, the United States Sentencing Commission has expressed its opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended.[1]

---

[1] United States Sentencing Guideline Amendments (compilation contains unofficial text of final amendments to the federal sentencing guidelines submitted to Congress on April 30, 2015, effective November 1, 2015; official text appeared in the Federal Register), http://www.ussc.gov/guidelines/amendments/reader-friendly-version-amendments-submitted-congress-april-30-2015-effective-november-1-2015, 45.

In the present case, Mr. Prado Ruiz does not qualify for a minimal role reduction, but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he plead guilty. Mr. Prado Ruiz and his indicted co-defendants were hired by a South American drug trafficking cartel to act as mere couriers. Their mission was the single task of transporting cocaine from South America to Central America while on-board a go-fast vessel. PSR ¶¶ 9 – 14. All crewmembers of that vessel were to receive financial compensation for transporting the drugs, but none of them had any ownership or proprietary interest in the drugs. In this context, Mr. Prado Ruiz is less culpable than the sellers of the cocaine, less culpable than the manufacturers of the cocaine, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the load guard who was in charge of the transportation operation of the cocaine, and less culpable than the drug dealers who ultimately distribute the cocaine.

Mr. Prado Ruiz's mitigating role and the mitigating role of others in a similar situation has been addressed by the United States Sentencing Commission. After conducting an in-depth national study and taking public comment, the Sentencing Commission found that courts were not applying the mitigating role

reduction as often as was intended by the Commission, despite a 2002 amendment. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.[2]

Based on these findings, the Sentencing Commission put forward a clarifying amendment to U.S.S.G. § 3B1.2. This amendment to the guidelines was fashioned in the hope of fostering a wider application of the mitigating role reduction for defendants who perform relatively low-level functions, such as so-called "mules" and "couriers," for multi-national and global drug trafficking enterprises. It was the intent of the Sentencing Commission by way of the advisory amendment to address the Commission's observation "that courts' often [incorrectly in the eyes

---

[2] Id.

of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense."[3]

Of significant note in the context of mitigating role reductions in these types of cases is the Eleventh Circuit Court of Appeals opinion in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). The *De Varon* decision has been used almost exclusively in this district to deny minor role reductions for transporters of large quantities of cocaine while on a vessel subject to the jurisdiction of the United States. The *De Varon* decision relied heavily on the principle that defendants who play an essential or integral role in the offense conduct for which they are convicted are not eligible for a mitigating role reduction. It was this form of judicial reasoning that the Sentencing Commission's amendment to U.S.S.G. § 3B1.2 was tailored to address.

In response to what the Sentencing Commission viewed as an "inconsistent" and "sparse" application of the mitigating role downward adjustment, the amendment to U.S.S.G. § 3B1.2, referenced above, was designed to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies."[4] The amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise

---

[3] Id.
[4] Id.

appropriate circumstances."[5]  Although not referenced in the amendment itself, a reading of the *De Varon* opinion appears to be one of the cases the Sentencing Commission found to be discouraging courts from applying the mitigating role downward adjustment in suitable cases.

To assist courts and encourage them to apply the downward adjustment more frequently, the Sentencing Commission provided courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment."[6]  Specifically, the Commission directs a sentencing court to consider the following factors:

(i) The degree to which the defendant understood the scope and structure of the criminal activity;

(ii) The degree to which the defendant participated in planning or organizing the criminal activity;

(iii) The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) The nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.[7]

---

[5] Id.
[6] Id.
[7] Id., 48.

In addition, and of great significance to the present case, the amendment further provides the following:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.[8]

These factors and examples set out in the commentary and application notes of U.S.S.G. § 3B1.2, as it will be shown below, support Mr. Prado Ruiz's request for a 2-level minor role downward adjustment.

Another significant detail is that the Sentencing Commission did not list the amount of drugs involved in the criminal activity as a factor in determining the applicability of a mitigating role reduction. This silence is in contrast to the *De Varon* decison, noted above, where the Eleventh Circuit Court of Appeals determined the amount of drugs found in a courier's possession to be of great importance. As noted by the Court in *De Varon*,

> because the amount of drugs in a courier's possession – whether very large or very small, may be the best indicator of the magnitude of the courier's participation

---

[8] Id.

> in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case.

*De Varon*, 175 F.3d at 943. Even more, the *De Varon* decision pointed to an Application Note within the U.S.S.G. to support the argument that the quantity of drugs was a significant factor in the context of a mitigating role downward adjustment. As the court stated: "[I]ndeed, the Guidelines explicitly recognize that the amount of the drugs may be determinative in the context of the minimal participants." *Id*. However, subsequent to the *De Varon* opinion, the application note that was relied upon by the *De Varon* court, U.S.S.G. § 3B1.2, comment. (n.2), was deleted from the U.S.S.G. on November 1, 2001. *Id*. The removal of an illustrative example regarding the amount/weight of the drugs is evidence of the Sentencing Commission's intent that the amount of the drugs involved should not be a determinative factor when courts consider a mitigating role downward adjustment. Even more, the Sentencing Commission's amendment related to this issue, which lists several relevant factors the sentencing court should consider, neither includes the amount of the drugs involved nor expresses the opinion that the amount of drugs involved should be determinative.

Thus, in contrast to the *De Varon* opinion and some of the decisions outdated references, the Sentencing Commission's amendment and the current language of U.S.S.G. § 3B1.2 makes it abundantly clear that Mr. Prado Ruiz

9

should receive a 2-level minor role reduction pursuant to U.S.S.G. § 3B1.2(b). He and his indicted co-defendants were hired by a South American drug trafficking cartel to act as couriers for the task of transporting cocaine from South America to Central America while on-board a go-fast vessel. He and his fellow crewmembers were to receive financial compensation for transporting the drugs, but none of them had any ownership or proprietary interest in the drugs. Each was being paid to perform the limited task of transporting drugs from one location to another by way of the open sea.

 As stated above, Mr. Prado Ruiz's role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation, or even the end distributor of the cocaine. He was simply being paid along with his crewmembers to perform the task of piloting and transporting a vessel containing cocaine from the sellers to the buyers of the cocaine. The fact that Mr. Prado Ruiz received a two-level enhancement for piloting or navigating the go-fast vessel does not exclude him from a mitigating role reduction, as is often argued. If that was the intent of the Sentencing Commission, then the Commission would have specifically noted such prohibition within the guidelines. Yet no such prohibition exists. Certainly a person's ability to drive a motorized object in a certain direction does not in any way effect their role or relative culpability level within a large, multi-national drug trafficking cartel.

Taking into account the guidance provided in U.S.S.G. § 3B1.2 and the formation of the relevant amendments to that section, and then analyzing the non-exhaustive list of factors provided in that section, it is clear that each and every factor supports Mr. Prado Ruiz's request to receive a minor role reduction.[9] As a simple courier or transporter of drugs, Mr. Prado Ruiz:

(i) Had limited understanding of the scope and structure of the criminal activity and was following orders to transport cocaine from point A to point B;

(ii) Had no significant role (or authority) in planning or organizing the criminal activity;

(iii) Had neither decision-making authority nor any influence regarding the exercise of decision-making authority within the grand scheme;

(iv) Had little responsibility or discretion in performing the limited function of transporting packages of cocaine from South America to Central America;

(v) Had no proprietary interest in the criminal activity and was simply being compensated to perform certain tasks (i.e., transportation of drugs).[10]

Finally, the fact that Mr. Prado Ruiz may have been "integral" or "indispensable" to the larger drug trafficking organization, simply by his facilitating the transportation of the drugs from South America to Central America, does not preclude him from receiving a minor role reduction. Essentialness in a task or

---

[9] Id.
[10] Id.

11

operation does not directly relate to importance and significance in that task or operation.

In summary, Mr. Prado Ruiz should receive a 2-level minor role reduction. Such a reduction would bring his total offense level to a 33 which, with a criminal history category I, would bring Mr. Prado Ruiz's advisory guideline imprisonment range to 135 – 168 months.

## II. Mr. Prado Ruiz's extreme remorse over his errors in judgment and criminal acts is a mitigating factor.

While remorse over participating in a criminal act is a factor taken into account to a certain degree by the sentencing guidelines in U.S.S.G. § 3E1.1(a) and (b), the same remorse is also a permissible mitigating factor this Court can consider if it is present to an exceptional degree. *United States v. Fagan*, 162 F.3d 1280 (10th Cir., 1998). *See also United States v. Carter*, 122 F.3d 469 (7th Cir., 1997) (court found no error in the district court's ruling that, although the defendant's remorse had been recognized by the district court when his sentence was reduced for acceptance of responsibility, the district court could have departed further if it had found his remorse to be exceptional). From early on in his case, to his Presentence Investigation Interview, to his full and lengthy cooperation with federal law enforcement officers during his debriefing and the considerable assistance he provided them, and up to his anticipated formal allocution before this

Court at the sentencing hearing, Mr. Prado Ruiz has expressed extraordinary remorse and regret over his terrible decisions to engage in the criminal activity he participated in. Standing up and owning past behavior that is wrong and expressing regret for it are huge steps towards generally deterring others from the same criminal activity, as well as specifically deterring Mr. Prado Ruiz from future criminal activity. Ten years in federal prison is a serious punishment for the crime Mr. Prado Ruiz has admitted to, and it is a punishment that will adequately deter him and others from committing criminal offenses in the future.

### III. The requested ten year prison sentence reflects the seriousness of the offense, promotes respect for the law, justly punishes Mr. Prado Ruiz, and protects the public.

All of the sentencing factors the Court must consider pursuant to the dictates of 18 U.S.C. § 3553(a) are adequately served by a ten year sentence of imprisonment. Such a sentence would be a substantial one, and would serve as an adequate deterrent for similar behavior, promote respect for the law, and provide a just punishment. Moreover, a sentence of this significant duration will afford Mr. Prado Ruiz the opportunity to learn to read and write in English, as well as to gain valuable skills in a trade, thereby protecting the public from any future criminal behavior based on his impoverished past and lack of employable skills.

**WHEREFORE**, Mr. Prado Ruiz respectfully requests a sentence of ten years in prison, which is a reasonable sentence that is no greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553.

DATED this 27th day of October, 2016.

                                        Respectfully submitted,

                                        DONNA LEE ELM
                                        FEDERAL DEFENDER

                                        */s/ Adam J. Nate*

                                        Adam J. Nate
                                        Florida State Bar No. 0077004
                                        Assistant Federal Defender
                                        400 North Tampa Street
                                        Suite 2700
                                        Tampa, Florida  33602
                                        Telephone:  813-228-2715
                                        Fax:            813-228-2562
                                        Email:        Adam_Nate@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of October, 2016, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of the Court, which will send a notice of the electronic filing to:

Mr. Joseph K. Ruddy, Assistant United States Attorney

*/s/ Adam J. Nate*

Adam J. Nate
Assistant Federal Defender